JOSEPH MICHAEL ET AL., Respondents, *v.* ST. LOUIS MUTUAL FIRE INSURANCE COMPANY, Appellant.

March 17, 1885.

1. SALES—LEGAL TITLE—CONTRACTS.—A contract under which one person executes his promissory notes for the purchase of a certain stock of goods and enters into possession thereof, agreeing to hold and manage the same as the vendor's agent until such time as the notes shall be paid, does not pass the legal title.

2. PAROL EVIDENCE.—Parol evidence concerning the interpretation which parties to a written contract have put upon the instrument is not admissible where the language is so clear as to admit of but one interpretation.

3. CONTRACTS—INTERPRETATION IS FOR THE COURT.—The interpretation of a written contract which is free from ambiguity is for the court, and it is error to submit the question of its meaning to the jury.

4. INSURANCE—INSURABLE INTERESTS.—One who is in possession of goods under a contract of purchase has an insurable interest therein, equal to the amount by him paid.

5. PARTIES TO ACTIONS.—The assignor of a policy of fire insurance is not a proper party to be joined with the assignee thereof in an action on the policy for a loss.

6. The recovery, by an assignee of a policy of fire insurance, for a loss, is measured by the interest which his assignor had in the property.

APPEAL from the St. Louis Circuit Court, LUBKE, J. *Reversed and remanded.*

MADILL & RALSTON, for the appellant: The insurer is responsible only to the extent of the interest of the applicant, and that must be shown at the trial.—*Ayers v. Insurance Co.,* 17 Iow. 176–181; *Tyler v. Insurance Co.,* 12 Wend. 513; *Mers v. Insurance Co.,* 68 Mo. 127, 132; Wood, Ins., sects. 257, 258, 260, 281.

Leo Rassieur and Dexter Tiffany, for the respondents: Indefeasibility of title is not the criterion of insurable interest.—*Gaylord* v. *Insurance Co.*, 40 Mo. 13, 17.

Rombauer, J., delivered the opinion of the court.

This is an action on a policy insuring plaintiff, Joseph Michael, and his assigns against loss by fire, in the sum of two thousand dollars, on a stock of goods in a country store. Martin Michael, who claims to hold the policy as collateral security for Joseph's debt to him of one thousand dollars, joins as plaintiff in the action. The main controversy between the parties on the trial of the cause was whether the policy had been avoided by part alienation of the property, and whether the instructions of the court, touching plaintiff's right of recovery, the ownership of the goods, and the measure of damages, are correct.

The by-laws of the insurance company, which are made part of the policy, provide that, in case of any transfer of the interest of any person insured by it, in the property insured, either by sale, process of law, by change in partnership, or otherwise, the policy of such person insured should from thenceforth be void and of no effect.

The assured acquired his interest in the property from his co-plaintiff, Martin Michael, and the contract by which such interest was acquired was offered in evidence on the trial by himself. That contract recited that the vendor would sell and deliver to him the property as soon as he shall have paid to the vendor the total sum of three thousand and sixteen dollars, agreeably to his twelve certain promissory notes of even date therewith, and also further recited "and it being distinctly understood that as agent of and for the benefit of said Martin Michael, the said Joseph Michael, without any compensation or charge, will carry on the said country store, in the usual way of business, selling and buying for cash and not contracting any debts whatever, nor signing any notes or other liabilities, until the above

sum, evidenced by said notes, shall have been fully paid and satisfied, to all of which I, Joseph Michael, in consideration of the promises hereby agree."

This contract was signed by both Joseph and Martin Michael and bears date March 10, 1882. The policy sued on bears date June 24, 1882, and under the same date the following endorsement was made upon it: "Having conveyed by deed of trust the property within insured and the land whereon they stand to Martin Michael, as his interest may appear, I do hereby assign to him the within written policy, to hold as collateral security for the performance of the condition of said conveyance.

JOSEPH MICHAEL.

JOHN C. VOGEL, *Prest.*

The Directors consent.

ATTEST: JOHN C. SUTTER, *Secretary.*"

There was no evidence offered by either party that Joseph Michael ever acquired any other interest in the property insured than the one conveyed to him by the above contract.

When the bill of sale was introduced by plaintiff, the trial court suggested that counsel for plaintiff offered to show further acts of the parties making an absolute and complete transfer, but in point of fact, no such evidence was ever offered. On the contrary, the conduct and acts of Joseph Michael, the assured, in his dealings with his brother-in-law, and one Aukeny, to whom, as he himself claimed, he successively transferred interests, purely conditional and to become vested only upon a full payment of his notes held by Martin Michael, clearly indicates his own understanding of the contract, and that he himself was not to become owner of the property until the claim of Martin Michael was fully paid and satisfied.

The only evidence which could possibly be claimed as bearing on this question of modification of the original contract, is the testimony of the assured to the effect that the insurance was taken out upon consultation with Martin Michael, and that Martin Michael said when he

informed him he would take out the insurance and assign the policy to him, "that was all right." No claim is even advanced that the deed of trust mentioned in the assignment of the policy was ever executed or to be executed.

It is true that where a contract is ambiguous, the court should leave the parties to be governed by their understanding of their own language, because it thus in effect enforces the contract they have made; but evidence of such understanding is inadmissible when the language is clear and will admit only of one interpretation.—*St. Louis Gas Light Co.* v. *City of St. Louis*, 46 Mo. 128.

The contract between Martin Michael and Joseph Michael is clear and unambiguous. It is a contract well known to the law, a contract of future sale. The parties might make another contract subsequently if they saw fit to do so, but they could not make another contract by simply concluding that the contract which they had made meant another thing than what its terms clearly import. The question of sole ownership of the property was an issue raised by defendant's answer. As evidence of such ownership, the assured offered the contract of future sale executed by Martin Michael. The interpretation of that contract, its language being free from ambiguity, was a question of law and not of fact. It was for the court to say, and not for the jury to find, what that contract meant. The court therefore erred in instructing the jury at the instance of plaintiffs, that if they found that "On said 24th of June, 1882, said Joseph was the owner of the stock of goods described in said policy, and continued to remain the owner of such stock, until the occurrence of a fire on January 24, 1883," etc., "they should find for plaintiffs," and also that plaintiffs' measure of damages was that of general and sole owners of the property, which is the substance of the fifth instruction.

Since it is sufficient that the assured should stand in such a relation to the property that any injury thereto, or its destruction by the peril insured against would

entail pecuniary loss upon him, it is apparent that Joseph Michael, at the date of insurance, had an insurable interest in the property.—Wood on Fire Ins., sect. 267, 270; *Ayers* v. *Ins. Co.*, 17 Iowa, 181; *Lucena* v. *Crawford*, 2 Atk. 292; *Barclay* v. *Cousins*, 2 East, 543.

But insurable interest is one thing and ownership is another. The fact of ownership was put in issue by the answer. That defense did not deny the insurable interest of Joseph Michael, but the extent of that interest, and was a partial defense wholly independent of the defenses which claimed that the policy had been avoided by alienation of the property. This the court in its instructions to the jury seems to have wholly overlooked. If the assured was the owner of the property, then, regardless of what he may have owed to other parties on account thereof, his loss would be measured by the market value of the goods destroyed. If he had only a contingent interest in the property, then his loss must be measured by the value of that contingent interest, because the insurer is responsible only to the extent of the interest of the applicant, and that must be shown at the trial.—*Ayers* v. *Ins. Co.*, 17 Iowa 183; *Wilson* v. *Hill*, 3 Metc. 66.

The errors of the court in giving plaintiffs' first and fifth instructions, containing the propositions above referred to, were prejudicial to the defendant, because as the result shows they affected the extent of plaintiffs' recovery, and made it greater than on plaintiffs' own showing it could legally be.

The jury were evidently still further misled by the joinder of Joseph Michael and Martin Michael as plaintiffs, when in the nature of things only one of them could sue. We are referred to the case of *Boynton* v. *Ins. Co.* (16 Barb. 254), in support of the proposition, that under the provision of the New York code, almost identical with our own, the assured, and one who holds the policy as collateral security may join as plaintiffs, in a suit upon the policy. We do not find that that case has ever been overruled, nor do we find that it has ever

been followed on that point, either in that state or any-where else. We believe, however, that it is opposed to the practice in this state, which has followed the rule laid down in *Cable* v. *The St. Louis Marine Railway & Dock Co.* (21 Mo. 135), which substantially holds that where the whole of a cause of action has been assigned the assignee is the party in interest, and should sue alone, and where part of it has been assigned, the assignor should sue. Now in this case the policy had been assigned to Martin Michael. He was the assignee and holder of the instrument. If plaintiffs' theory, namely, that Joseph was the absolute owner of the goods, and Martin a mere mortgagee, could find any support in the testimony, then Martin is the only proper party to sue. If the indebtedness of Joseph to Martin Michael became extinct by the destruction of the goods, then Joseph alone could sue. In neither event could both have a cause of action against the company. The word "interest" in section 3464 of the Revised Statutes of 1879, means the legal interest.—*Gibbons* v. *Gentry*, 20 Mo. 477; *Gardner* v. *Armstrong*, 31 Mo. 540.

It is true that the objection of misjoinder of parties should be raised by demurrer, and not by instruction, and it is also true, that it is immaterial to defendant whether the proper party alone recovers, or both plaintiffs recover together, provided both together only recover for Joseph's loss. We do not, therefore, mention this misjoinder for the purpose of singling out the action of the court in refusing either of defendant's three demurrers to the evidence as error, but for the purpose of showing that the errors of the trial court in giving plaintiffs' first and fifth instructions became all the more prejudicial to defendant on account of this misjoinder. The jury were apt to lose sight of the fact that Martin Michael's cause of action on the policy was one derived exclusively from his assignor Joseph. Martin had an insurable interest in the goods, because the property to the extent of his remaining claim for the purchase money was at his risk and not at the risk of Joseph; but this

interest of Martin was never insured, and that is a fact which was entirely lost sight of by the jury.

We are also of opinion that defendant's fifth instruction should have been given, as there was evidence to support it. That instruction is not, as plaintiffs claim, necessarily covered by the fourth instruction given on behalf of defendant. It did not go to the extent of avoiding the policy on account of fraud or false swearing in proofs of loss, or on account of alienation of the property, but bore on the question of extent of insurable interest at date of loss alone. The dealings of Joseph Michael with Aukeny may have been of a character, under the testimony, that while they did not work an alienation so as to avoid the policy altogether, they may yet have decreased the insurable interest of plaintiff Joseph.

For the reasons above stated the judgment must be reversed, and is accordingly reversed, and the cause is remanded to be proceeded with in conformity with this opinion. All the judges concur.